IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| BRAHMA GROUP, INC.,<br><br>    Plaintiff,<br><br><br><br><br>        vs.<br><br><br>BENHAM CONSTRUCTORS, LLC,<br>HOLLY REFINING & MARKETING<br>COMPANY – WOODS CROSS and<br>WOODS CROSS REFINING COMPANY,<br>LLC,<br><br>    Defendants. | MEMORANDUM DECISION AND<br>ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANT<br>BENHAM CONSTRUCTORS'<br>MOTION TO DISMISS<br><br><br><br><br>Case No. 2:08-CV-970 TS |

This matter is before the Court on Defendant Benham Constructors, LLC's ("Benham")

Motion to Dismiss.  The case arises out of a contractual dispute, wherein Benham contracted with

co-Defendants Holly Refining and Marketing Company ("HRMC") and Woods Cross Refining

Company ("WCRC") to build certain oil refinery facilities.  Plaintiff was one of Benham's

subcontractors.  In its Complaint, Plaintiff claims that Behnam failed to comply with its contractual

obligations, which resulted in damages to Plaintiff.  Having determined that oral argument would

1

not materially assist in the determination of this matter, the Court will decide the issues herein without oral argument.

In its Motion, Benham argues: (1) that there is insufficient evidence to show complete diversity, thus removing diversity jurisdiction; (2) that venue is improper for Counts I, II, IV and VI because a mandatory venue-selection clause in the parties' contract requires the case to be filed in Texas state court, located in Dallas, Texas; (3) that Plaintiff failed to comply with a mandatory mediation requirement which is a condition precedent to filing this lawsuit; and, in the alternative, (4) that venue should be transferred to the United States District Court for the Northern District of Texas. Plaintiff argues in response that complete diversity has been shown, that Utah law prohibits the enforcement of the venue-selection clause, that there is no mandatory mediation clause established in the contract as a condition precedent, and that a transfer of venue would be inappropriate because venue is proper here.

In response to Benham's arguments regarding lack of subject matter jurisdiction, Plaintiff and Defendants have agreed to dismiss HRMC, thus preserving complete diversity among the remaining parties. Plaintiff has filed a Motion to Dismiss Defendant HRMC. None of the parties object to the dismissal, so that Motion will be granted, and Defendant's Motion, to the extent it argues lack of subject matter jurisdiction, will be denied as moot. For the reasons set forth below, the Court will grant the Motion to Dismiss for lack of venue, deny the motion for transfer of venue, and deny the Motion to Dismiss for failure to state a claim.

As a preliminary matter, both parties have submitted material outside the pleadings. However, the Court may consider the evidence without converting the motion to a motion for

summary judgment to the extent that the motion is a motion to dismiss for lack of subject matter jurisdiction[1] or for improper venue.[2]

## I.  FACTUAL BACKGROUND

The following facts are taken from Plaintiff's Complaint and the memoranda of the parties. Plaintiff is a Nevada corporation with its principle place of business in Salt Lake City, Utah. Benham is an Oklahoma limited liability company with its principle place of business in Oklahoma City, Oklahoma.  HRMC is Delaware corporation which does business in Utah.  The State of Utah's business registry lists for HRMC a Dallas, Texas, address, but HRMC, in its Answer to Plaintiff's Complaint, denied that it's principle place of business was in Texas.  HRMC operates a refinery in Woods Cross, Utah (the "Refinery"), and the website of its parent corporation, Holly Corporation ("Holly"), lists for HRMC a Woods Cross, Utah, address.  WCRC is a Delaware limited liability company with its principle place of business in Dallas, Texas.

Sometime in 2006, Holly decided to expand the Refinery by adding an Oil Gas Hydrocracker (the "Project").  Benham submitted a bid to design, construct and procure materials for the Project, and on March 7, 2007, Benham and Holly entered into a contract (the "Contract") wherein Benham would be the general contractor for the Project.  Benham solicited subcontractor bids and chose Plaintiff as a subcontractor for fabrication and installation of piping, structural steel erection, and setting of equipment.  Benham and Plaintiff entered into an arms-length agreement and there are no allegations of unequal bargaining power.  Plaintiff's original bid was nearly six million dollars and

---

[1]*Paper, Allied-Indus., Chem. & Energy Workers Int'l Union v. Continental Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005).

[2]*See Kukje Hwajae Ins. Co., Ltd. v. M/V Hyundai Liberty*, 294 F.3d 1171 (9th Cir. 2002) (holding that under a motion pursuant to Fed. R. Civ. P. 12(b)(3), "the pleadings need not be accepted as true, and facts outside the pleadings may be considered").

was accepted by Benham on or about June 14, 2007. The contract entered into between Benham and Plaintiff (the "Subcontract") included a twenty-eight week schedule and contemplated a start date of approximately September 1, 2007.

During the Project, various disputes arose between Benham and Plaintiff. Specifically, Plaintiff alleges that Benham failed to fulfil its contractual obligations for site preparation and failed to grant Plaintiff access to necessary areas of the Refinery during the construction schedule. Plaintiff also alleges that Benham failed to provide necessary designs and materials. Plaintiff alleges that these and other actions by Benham delayed completion of the project and significantly increased the costs to Plaintiff. Moreover, Plaintiff alleges that Benham interfered with its ability to get paid by Holly by misrepresenting the true nature of delays on the Project.

Relevant to the present case, the Subcontract provides that:

> All matters relating to the validity, performance, or interpretation of this Subcontract and the remedies provided herein shall be governed by the law of the jurisdiction required in the Contract, or if none is stated or required, the law of the State of Oklahoma. Unless otherwise required by the Contract, any suit, action or proceeding initiated by one of the parties against the other on any matter arising out of this Subcontract shall be filed and maintained in the state district court located in Oklahoma City, Oklahoma County, Oklahoma, or at Contractor's option and discretion, in the same state judicial district as, or nearest to, the project site.[3]

This provision of the Subcontract was amended by an August 30, 2007 agreement between the parties, establishing that the applicable state law would be the law of Texas, and that any suit, action or proceeding must be filed and maintained in the "state district court located in Dallas, Texas."[4]

---

[3]Docket No. 21, Ex. 1 at 12.

[4]*Id.*, Ex. 2 at 2.

4

The Contract does not contain a forum selection provision and states that the governing law for disputes arising from the Contract is the law of the State of Texas.[5]

The Subcontract also addresses the issue of dispute resolution.  Under the Subcontract, Plaintiff is required to give written notice of any dispute or claim within seven days following the action that gives rise to the dispute or claim.  Article 17 of the Subcontract provides that:

> [Benham] may render a written decision thereon within thirty (30) days from receipt of the written notice of such claim or dispute.  If [Plaintiff] does not accept or agree with such decision, or any part thereof, or [if] no decision is rendered within thirty (30) days, [Plaintiff] shall so notify [Benham] in writing within seven (7) days, and the parties shall exert reasonable and good faith efforts to reach a satisfactory resolution, including mediation proceedings through a certified mediator or mediation service.  If such efforts are unsuccessful, either party may elect to file a legal action against the other in an appropriate court of law consistent with the jurisdictional provisions herein; provided that the parties expressly agree that any dispute resolution procedure specified in the Contract shall not pertain to or govern the resolution or disposition of any claim or dispute only between [Benham] and [Plaintiff], and unless required by the Contract, any such dispute shall be submitted to mediation and may be consolidated with any other mediation or dispute resolution proceedings between [Benham] and other parties including [Holly].[6]

The provisions of the Subcontract immediately preceding Article 17 require Benham to initiate an action against Holly on behalf of Plaintiff in the event that Holly's actions give rise to the dispute.

In its complaint, Plaintiff alleges the following causes of action: (1) breach of contract by Benham in failing to comply with the terms of the Subcontract; (2) misrepresentation by Benham in inducing Plaintiff to execute the Subcontract; (3) failure to pay Plaintiff amounts owed, leading to a mechanic's lien on the Property, which Plaintiff now seeks to foreclose; (4) deficiency judgment against Benham, if foreclosure sale of the Property results in a deficiency under the lien; (5) failure

---

[5]*Id.*, Ex. 3 at 48-49.

[6]*See id.*, Ex. 1 at 8; *id.*, Ex. 2 at 2.

to obtain a payment bond by Holly; (6) unjust enrichment/quantum meruit for failure of Benham to pay Plaintiff.

## II.  DISCUSSION

A.    IMPROPER VENUE

Benham argues that the first, second, fourth, and sixth causes of action in the Complaint must be dismissed because the forum selection clause of the Subcontract requires that any action arising from a dispute regarding the Subcontract to be filed and maintained in the state district court  in Dallas, Texas.  Alternatively, Benham argues that venue should be transferred to the United States District Court for the Northern District of Texas, pursuant to 28 U.S.C. § 1404(a).

1.    *Motion to Dismiss for Improper Venue*

"A motion to dismiss based on a forum selection clause frequently is analyzed as a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3)."[7]  Mandatory forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances."[8]   A forum selection clause may be unreasonable if it contravenes a strong public policy of the forum, "whether declared by statute or by judicial decision."[9]  The burden is on Plaintiff to make a strong showing that the forum selection clause should be set aside.[10]

---

[7]*K&V Scientific Co., Inc. v. Bayerische Motoren Werke Aktiengesellschaft*, 314 F.3d 494, 497 (10th Cir. 2002) (quoting *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 956 (10th Cir. 1992)).

[8]*Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992).

[9]*M/S Bremen, GmBH, v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972).

[10]*Id.*

6

A forum-selection clause is mandatory if it contains "clear language showing that jurisdiction is appropriate in the designated forum."[11]  Here, the forum selection clause states that "*any* suit, action or proceeding initiated by one of the parties against the other on any matter arising out of this Subcontract *shall be filed and maintained* in the state district court located in Dallas, Texas."[12]

The Court finds that the language of the Subcontract's forum-selection clause is mandatory, and therefore enforceable.  Plaintiff argues, however, that Utah law provides that "[a] provision in a construction agreement requiring a dispute arising under the agreement to be resolved in a forum outside of this state is void and unenforceable as against the public policy of this state if: (a) one of the parties to the agreement is domiciled in [Utah]; and (b) work to be done and the equipment and materials to be supplied under the agreement involves a construction project in [Utah]."[13]  The parties do not dispute that both statutory requirements are met here.  Plaintiff therefore argues that there is a strong public policy against enforcement of the forum-selection clause.  The statute's "primary purpose," as expressed by the Utah Supreme Court, is "to prohibit out-of-state contractors . . . from haling a Utah resident into a foreign state's court when the work by the Utah resident is performed within the state of Utah.  The statute furthers Utah's policy interest in providing its residents with a forum in which they can pursue their legal claims."[14]

As a preliminary matter, it does not appear that protecting Utah residents from lawsuits filed in another jurisdiction and providing a forum for Utah residents' legal disputes are sufficient to

---

[11]*Excell, Inc. v. Sterling Boiler & Mechanical, Inc.*, 106 F.3d 318, 321 (10th Cir. 1997).

[12]Docket No. 21, Ex. 1 at 12; *Id.* Ex. 2 at 2 (emphasis added).

[13]Utah Code Ann. § 13-8-3.

[14]*Jacobsen Const. Co., Inc. v. Teton Builders*, 106 P.3d 719, 726 (Utah 2005).

qualify as "strong" public policies against abiding by the express wishes of the parties and enforcing the forum selection clause.[15]   Every state has a motivation to provide a forum for its residents, but the requirement of a "strong" public policy must require more than a state's understandable desire to provide a judicial haven for businesses domiciled in the state.[16]   In *M/S Bremen, GmBH*, the United States Supreme Court stated that "[t]he expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our court."[17]   While the Supreme Court was expressly referencing international trade, the principles are just as applicable to trade between the states.  The temptation to give in to parochial interests is what motivated the Framers of the United States Constitution to remove from the states control over interstate and international commerce.[18]

Plaintiff and Benham entered into an arms-length agreement and even negotiated for different choice-of-law and forum-selection provisions than what appear in the standard subcontract used by Benham.  Now, however, Plaintiff asks the Court to disregard the clear intent of the parties in

---

[15]In *M/S Bremen, GmBH*, 407 U.S. at 15, the Supreme Court rejected an expressed public policy as not being sufficient, indicating that the state of Utah does not get to define its own public policy as "strong."

[16]Plaintiff refers to case law stating that a state legislature is entitled to establish the public policy of that state.  *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 524 (1959).  Notably, however, at no time does Plaintiff identify Utah Code Ann. § 13-8-3 as a "strong" public policy, the precise standard established by the *M/S Bremen* Court.  Instead, Plaintiff repeatedly refers to § 13-8-3 as the "substantive" public policy of Utah.  *See, e.g.*, Docket No. 30 at 6.  Even assuming, *arguendo*, that § 13-8-3 is a substantive rule, rather than a procedural rule, Plaintiff fails to allege that § 13-8-3 meets the standard established in *M/S Bremen*.

[17]*Id.* at 8-9.

[18]*See H.P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 533 (1949); *United States v. Faasse*, 265 F.3d 475, 494-95 (6th Cir. 2001); *A.L. Blades & Sons, Inc. v. Yerusalim*, 121 F.3d 865, 869 n.7 (3d Cir. 1997).

choosing Texas as the venue for disputes.  The Court is reluctant to do so.  "The choice of forum was made in an arms-length negotiation by experienced and sophisticated businessmen, and absent some compelling and countervailing reason it should be honored by the parties and enforced by the courts."[19]  Benham argues that enforcement of the forum selection clause is appropriate because: (1) the Subcontract requires that Texas law, not Utah law, be applied, and that Texas law would require the enforcement of the forum selection clause; and (2) Utah Code Ann. § 13-8-3 is a procedural rule, and therefore non-binding on the Court under *Erie*.[20]

  a. *Utah vs. Texas law*

  Benham argues that § 13-8-3 may not be applied here because the parties' contract clearly requires application of Texas, rather than Utah law.  "When a contract contains a choice-of-law clause, a court can effectuate the parties' agreement concerning the forum only if it interprets the forum clause under the chosen law."[21]  The Tenth Circuit has stated:

> Because conflicts of law are inevitable in a federal system, parties to a contract are empowered to and frequently do choose a particular state's law to apply to the execution and interpretation of the contract.  Absent special circumstances, courts usually honor the parties' choice of law because two "prime objectives" of contract law are "to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract.[22]

---

[19]*Yavuz v. 61 MM, Ltd.*, 465 F.3d 418, 429 (10th Cir. 2006) (quoting *Bremen*, 407 U.S. at 12).

[20]*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[21]*Yavuz*, 465 F.3d at 428.

[22]*Boyd Rosene & Assoc's v. Kansas Municipal Gas Agency*, 174 F.3d 1115, 1121 (10th Cir. 1999).

The choice of law provision in the Subcontract clearly requires that Texas law be applied to interpret the Subcontract, and specifically the forum clause. Plaintiff argues, however, that Benham "fails to recognize that the substantive public policy of the state of Utah demands that this case be heard in this forum."[23] Plaintiff repeatedly claims that § 13-8-3 is an expression of "substantive" public policy by the Utah legislature, but that is not the standard set by the *M/S Bremen* Court, which expressly required a "strong" public policy interest. As noted previously, the political desire to provide a forum for in-state companies is understandable, but is not a strong public policy interest.

In *Jacobsen Const. Co., Inc. v. Teton Builders*, the Utah Supreme Court was faced with a contractual dispute, filed in Utah state court, in which work was conducted in Wyoming and some of the parties were Wyoming residents. At issue was the enforceability of a forum selection clause, which required any case to be filed in Utah state court, a provision which the defendant claimed was unenforceable on public policy grounds.[24] The parties also included in their contract a choice-of-law provision which declared that Wyoming law was to be applied, and the Utah Court agreed that "Wyoming law govern[ed] whether the forum selection clause [was] enforceable."[25]

The Utah Court noted that Wyoming law favored enforcement of forum selection clauses unless the forum clause was unreasonable, against the public policy of the State of Wyoming, or seriously inconvenient,[26] but the Utah Court held that Wyoming law also required an analysis of both

---

[23]Docket No. 30 at 2.

[24]*Jacobsen*, 106 P.3d at 723.

[25]*Id.*

[26]*Id.* at 724 (citing *Durdahl v. Nat'l Safety Assocs., Inc.*, 988 P.2d 525, 530 (Wyo. 1999)).

10

Utah and Wyoming public policy.[27]  The Utah Court then stated that § 13-8-3 expressed two separate public policies: first, "to prohibit out-of-state contractors, construction managers, or suppliers from haling a Utah resident into a foreign state's court when the work by the Utah resident is performed in the State of Utah"; and second, to provide Utah residents "with a forum in which they can pursue their legal claims."[28]  Notably, the Utah Court also rejected the argument that § 13-8-3 represented a broad public policy that construction disputes should be litigated in the state in which the work occurred.[29]  Thus, the Utah Court essentially conceded that § 13-8-3 represents precisely the "parochial concept that all disputes must be resolved under our laws and in our court"[30] which the *M/S Bremen* Court rejected in stating its ruling regarding strong public policies against enforcement of forum-selection clauses.

The choice-of-law provision in the Subcontract requires the application of Texas law, and the Supreme Court of Texas has held that Texas courts will enforce a forum-selection clause unless it contravenes a strong public policy in the state in which the case is brought.[31]  Contrary to Plaintiff's arguments, it does "make[] a difference whether [the] Court views § 13-8-3 through the prism of Utah law or Texas law,"[32] because Texas law requires Plaintiff to show that § 13-8-3 constitutes a "strong" public policy.  As noted, the public policy embodied in § 13-8-3 is not a strong

---

[27]*Id.*

[28]*Id.* at 726.

[29]*Id.*

[30]*M/S Bremen, GmBH*, 407 U.S. at 8-9.

[31]*In re AIU Ins. Co.*, 148 S.W.3d 109, 112 (Tex. 2004).

[32]Docket No. 30 at 6 n.2.

public policy, and therefore is insufficient under either Supreme Court precedent or Texas state law to invalidate the forum-selection clause at issue here. The Court therefore finds that the forum selection clause is enforceable.

      b.    *Would application of § 13-8-3 violate the* Erie *doctrine?*

Benham argues, alternatively, that the Court is not bound by § 13-8-3 because venue is a procedural question. The *Erie* Court stated that the federal courts were to apply federal procedural law[33] but, as the Tenth Circuit has stated, the line between substantive law and procedural law has "proven difficult to demarcate."[34] The *Erie* doctrine, as it currently stands, requires a two-part analysis. First, "[w]here a federal rule of procedure is directly on point, that rule applies."[35] Such a determination is not whether state and federal rules overlap, but "whether, when fairly construed, the scope of the Federal Rule is sufficiently broad to cause a direct collision with the state law or, implicitly, to control the issue before the court, thereby leaving no room for the operation of the state law."[36] Second, when left without a controlling federal rule of procedure, federal courts are "to heed the outcome-determination approach while also relying on the policies underlying the *Erie* rule: "'discouragement of forum-shopping and avoidance of inequitable administration of the laws.'"[37]

---

[33]*Erie*, 304 U.S. at 92.

[34]*Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1539 (10th Cir. 1996).

[35]*Id.*

[36]*Id.* at 1539-40 (quoting *Burlington Northern R.R. Co. v. Woods*, 480 U.S. 1, 4-5 (1987)) (internal quotes and brackets omitted).

[37]*Id.* at 1539 (quoting *Hanna v. Plumer*, 380 U.S. 460, 467-68 (1965)). *See also Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945) (holding that the outcome of litigation in federal court "should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.").

Federal law and the Federal Rules of Civil Procedure address venue and forum as procedural matters, so the Court finds that Utah Code Ann. § 13-8-3 is a procedural rule, rather than part of Utah's substantive law governing contracts.  It is not clear that the federal rule which favors enforcement of forum selection clauses is sufficiently broad to cause a direct collision with § 13-8-3.  However, even in the absence of a direct collision, enforcement of § 13-8-3 would be inappropriate in this case under the outcome-determination approach.  As discussed above, the Utah Supreme Court declared that, even in light of § 13-8-3, Utah courts should respect the choice of law chosen by the parties to the contract, requiring, in this case, application of Texas state law.  As discussed above, Texas state law requires enforcement of a forum-selection clause in spite of the stated policy goals of the Utah legislature in enacting § 13-8-3.

Furthermore, Plaintiff's arguments to the contrary, refusal to apply § 13-8-3 would likely encourage, rather than discourage, forum shopping.  The parties in this case negotiated not only a choice-of-law provision but the forum-selection clause.  Plaintiff now seeks to have the Court void the forum-selection clause because it believes it can obtain a better result in this forum.  When the parties have contractually agreed to a forum, courts can discourage forum shopping best by requiring adherence to the forum selection clause.

Because the forum selection clause is enforceable, either under Texas law or by application of the *Erie* doctrine, the forum selection clause renders venue improper for Counts I, II, IV, and VI of Plaintiff's Complaint, and those claims will be dismissed.

B.    REMAINING MOTIONS

Benham, in the alternative, moves the Court to stay proceedings on Count III and to transfer all other claims to the United States District Court for the Northern District of Texas.  Benham also moves for dismissal for failure to state a claim, arguing that there is a mandatory mediation

requirement in the Subcontract, and that Plaintiff failed to comply with that requirement.  However, because the Court will grant Benham's Motion to Dismiss for improper venue, there are no remaining claims against Benham before the Court.  The Court, therefore, need not address the parties' arguments on the remaining motions, and will dismiss the Motion to Transfer Venue and the Motion to Dismiss for failure to state a claim as moot.

## IV.  CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion to Dismiss Defendant Holly Refining & Marketing Company – Woods Cross Without Prejudice (Docket No. 41) is GRANTED.  It is further

ORDERED that Defendant Benham Constructors, LLC's Motion to Dismiss (Docket No. 20) is DENIED AS MOOT as to subject matter jurisdiction, transfer of venue and failure to state a claim, and GRANTED as to Counts I, II, IV, and VI of Plaintiff's Complaint.  Counts I, II, IV, and VI are dismissed without prejudice.

DATED   April 20, 2009.

BY THE COURT:

_____
TED STEWART
United States District Judge

14